IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERYL WEINGROW, | |
| Plaintiff, | Case No. : 1:20-CV-00143 |
| v. | **Trial by Jury Demanded** |
| INTEGRATED DNA TECHNOLOGIES, INC., and DANAHER CORPORATION, | |
| Defendants. | |

## COMPLAINT

COMES NOW the Plaintiff, SHERYL WEINGROW, by and through her attorneys, Case + Sedey, LLC, for her Complaint at Law against Defendants, INTEGRATED DNA TECHNOLOGIES, INC. and DANAHER CORPORATION, and states and alleges as follows:

### Introduction

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (hereinafter "Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.* (hereinafter the "ADEA"), and the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.* (hereinafter the "IHRA").

### Jurisdiction and Venue

2. Jurisdiction is conferred on this Court by the above-named statutes as well as by 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b).

1

**Factual Allegations**

3. Plaintiff Sheryl Weingrow ("Plaintiff") is a 58-year-old woman of Jewish faith, a citizen of the United States, and a resident of Chicago, Cook County, Illinois. Plaintiff was at all relevant times employed by Defendants Integrated DNA Technologies, Inc. and/or Defendant Danaher Corporation.

4. Defendant Integrated DNA Technologies, Inc. ("Defendant IDT") is a Delaware corporation registered and doing business in Skokie, Cook County, Illinois. At all relevant times, Defendant has had more than fifteen employees.

5. Defendant Danaher Corporation ("Defendant Danaher") is a Delaware corporation registered and doing business in Chicago, Cook County, Illinois. At all relevant times, Defendant has had more than fifteen employees.

6. In or around March of 2017, Plaintiff was recruited to join Defendant IDT by the company's former co-owner Elizabeth Walder.

7. Prior to that time, Plaintiff had spent over two decades developing a reputation as a talented and conscientious in-house counsel for a number of large multi-national corporations.

8. After a number of interviews and conversations with Defendant IDT's leaders at the time, Plaintiff accepted an offer of employment to work as the company's Associate General Counsel responsible for handling international and compliance issues. Plaintiff began working for Defendant IDT in or around April of 2017 and reported directly to Ms. Walder.

9. Plaintiff's performance during her time with Defendant IDT was impressive and she continuously met and/or exceeded the company's legitimate performance expectations. Indeed, in her most recent performance review, issued in January of 2018, Defendant IDT assessed Plaintiff's performance as "outstanding."

10. In or around March of 2018, Defendant IDT announced a stock purchase agreement with Defendant Danaher. Shortly thereafter, Ms. Walder, who planned to leave Defendant IDT after its sale, transferred Plaintiff to the company's Legal Department, reporting to Defendant IDT's General Counsel.

11. In or around April of 2018, Defendants finalized the sale and Defendant IDT became a wholly owned subsidiary and operating company of Defendant Danaher, reporting to Defendant Danaher's Life Sciences Platform. From that point forward, Defendant IDT and Defendant Danaher operated as Plaintiff's joint employers.

12. Defendant Danaher promoted Defendant IDT's former Chief Operations Officer Trey Martin to serve as the company's new President.

13. Defendant Danaher's General Counsel for Life Sciences, Tara Illiano, was assigned to lead the legal transition team.

**Plaintiff Engages in Protected Activity**

14. In or around June of 2018, Defendant IDT's then-CFO informed Plaintiff that he believed the culture of sexual improprieties at IDT had left the company "one complaint away from a '#MeToo' issue." He stated that Defendant IDT's Vice President of International Operations, Rick McConahay, was engaging in sexual relationships with employees and making inappropriate sexual comments to others.

15. Around that same time, IDT's Senior Vice President of Finance and Treasury shared similar concerns with Plaintiff – noting that she was told by her employees located at the Coralville, IA site that both Mr. McConahay and newly promoted President Trey Martin regularly engaged in inappropriate sexual behavior both with and toward Defendant IDT employees.

3

16. Then, on June 29, 2018, Defendant IDT's Information Technology Leader in the Skokie office told Plaintiff that several other employees had confided in him that Mr. McConahay had "[sexually] harassed women at every IDT site where he has worked."

17. Plaintiff's professional responsibilities did not include investigating allegations of sexual harassment by company officers. However, given the number of complaints she had received, she felt obligated to escalate the allegations of harassment to Defendant Danaher.

18. As a result, on July 3, 2019, while conducting joint training sessions in Coralville, IA Plaintiff told Heather Levin, Senior Counsel at Sciex (another Danaher operating company), that she was concerned that senior IDT leaders were sexually harassing IDT employees and creating a toxic workplace culture as a result. Ms. Levin said that she would share Plaintiff's complaint with Ms. Illiano.

19. On August 2, 2018, Plaintiff sent a follow up email to Ms. Levin which included a summary of the allegations of sexual harassment she had already shared.

20. Plaintiff's August 2 email also included additional detail regarding Mr. McConahay's alleged sexual harassment of employees, including but not limited to allegations that: a) he often left company dinners with female employees while insinuating to other employees that the two would be having sex; b) he had engaged in verbal harassment of five female employees (whom Plaintiff identified by name so that they could be interviewed); c) he berated and belittled women at IDT while rarely directing similar treatment at male employees; and d) he subjected female employees to undesired sexual innuendo in the workplace.

21. Later that same day, Todd McManus – who had recently been promoted to General Counsel for Defendant IDT and become Plaintiff's supervisor – contacted Plaintiff and instructed her not to speak directly to anyone at Defendant Danaher without contacting him first.

22. On or around August 5, 2018, Ms. Illiano visited Defendant IDT's offices and met with Plaintiff as well as other employees on IDT's legal team. During their one-on-one meeting, Plaintiff notified Ms. Illiano of the same sexual harassment issues regarding to Mr. Martin and Mr. McConahay that she had raised in her July 3 and August 2 communications. Plaintiff shared the former CFO's comment that Defendant IDT was "one complaint away from a '#MeToo' issue" and Ms. Illiano visibly cringed.

23. Ms. Illiano appeared annoyed by Plaintiff's complaint. She became confrontational and asserted that there was no issue unless and until an employee claimed that they had been victimized. Plaintiff disagreed and responded that the harassment created an inappropriate sexualized working atmosphere regardless of whether victims formally reported the conduct. Plaintiff noted that she had personally witnessed Mr. McConahay's sexual harassment on a recent work trip she had made to South Korea. Ultimately, Ms. Illiano agreed to escalate Plaintiff's concerns.

24. On August 22, 2018, Colleen Giusto, Defendant Danaher's Labor & Employment Counsel, contacted Plaintiff to discuss her sexual harassment concerns. Plaintiff relayed the same information to Ms. Giusto that she had previously shared with Ms. Levin and Ms. Illiano. Ms. Giusto stated that she would begin an investigation and that she would follow up with Plaintiff as she made progress. Plaintiff recommended that Ms. Giusto start her investigation by speaking with one female employee in particular at whom Mr. McConahay had directed his sexually inappropriate comments and Ms. Giusto agreed that made sense.

25. Plaintiff never heard anything further regarding the alleged investigation of her sexual harassment report. Neither Ms. Giusto nor any investigators for Defendants contacted her, despite that she had been witness to some instances of harassment and would have been an

5

important witness. Further, Plaintiff later spoke to the employee whom she and Ms. Giusto agreed should have been interviewed first and learned that no one had spoken to that employee about the allegations of harassment either.

### Defendants Retaliate and Discriminate Against Plaintiff

26. After Plaintiff shared the allegations of sexual harassment with Ms. Illiano and Ms. Giusto, Defendants began to exclude Plaintiff and marginalize her at work.

27. For instance, Ms. Illiano ceased all communications with Plaintiff with no explanation. Further, at a meeting of Defendant IDT's legal team in or around mid-October of 2018, Ms. Illiano invited everyone at the meeting except Plaintiff to attend an impromptu lunch.

28. In early November 2018, Plaintiff proposed that she take on oversight of export controls issues following the departure of Defendant IDT's expert on the subject, who had directed his team to reach out to Plaintiff for legal issues. Rather than entertain this request, Ms. Illiano responded by suggesting to Mr. McManus that he hire an export controls lawyer for Defendant IDT.

29. Then, in December of 2018, Defendant Danaher failed to invite Plaintiff to a Danaher Business Systems training that it offered as part of the onboarding process for IDT employees, despite that much of Defendant IDT's Skokie office attended the training.

30. Despite these constraints, Plaintiff continued to demonstrate a high level of productivity and maintained a high-quality of work product. Mr. McManus was so pleased with Plaintiff's work during this timeframe that he began using Plaintiff's work product as a model for the rest of Defendant IDT's legal team. He also asked her to speak to the legal department about compliance issues at a meeting scheduled for January 17, 2019.

31. Plaintiff was ultimately unable to attend that meeting, however, because on January 9, 2019, Defendants terminated her employment.

32. Specifically, Mr. McManus and Human Resources leader, Casey Garamoni, met with Plaintiff and stated that Defendant IDT was eliminating Plaintiff's position because it had decided that Plaintiff's international responsibilities should be handled outside of the United States.

33. Mr. McManus told Plaintiff later that day that Ms. Illiano had made the decision to terminate Plaintiff and that he had no choice but to follow her instructions. He asserted that Ms. Illiano wanted to reduce the size of Defendant IDT's legal department – despite that she had recommended hiring a new lawyer to handle export controls oversight just two months prior. Mr. McManus conceded that he did not know how he would absorb all of Plaintiff's work and stated his belief that there was "more than enough work for all of [them]" even if Defendant IDT hired a separate international lawyer. He also noted, correctly, that Plaintiff's workload included far more work than just her international responsibilities.

34. Defendants did not give Plaintiff an opportunity to transfer to or apply for other suitable positions within IDT or Danaher despite that, just six weeks later, Defendant Danaher posted a new position for Senior Legal and Compliance Counsel, Americas, based in Illinois for which Plaintiff was well-qualified.

35. Plaintiff's termination was effective that same day, her network access was terminated less than an hour after she was notified of her separation, and she was asked to return her building badge and leave the building.

36. Defendant IDT laid off several other employees in the Skokie office that same day. However, those employees' terminations were not effective immediately. Instead, they were

7

allowed time, in some cases as much as 60 days, to transition their work before their employment formally ended.

37. The January 9, 2019 layoffs in Defendant IDT's Skokie office disproportionately targeted older employees. Specifically, 16 of the 17 employees laid off were over the age of 40 (with 12 over the age of 50). Further the majority of the 17 employees who remained in the Skokie office after the layoff were under 40 years of age.

38. The layoffs also disproportionately targeted Defendant IDT's Jewish employees. Upon information and belief, at least 10 of the 17 employees laid off were Jewish – which represents a percentage far higher than the percentage of Jewish employees in Defendant IDT's workforce.

39. In total, just three members of Defendant IDT's legal department were terminated as part of the layoff – Plaintiff (Jewish and over the age of 50), a paralegal (Jewish and over the age of 50), and a non-lawyer scientist who had been hired to assist IDT's former co-owner, Dr. Joseph Walder, and who had not had any work to do or even come into the office since the sale to Defendant Danaher had been finalized nearly a year prior.

40. None of the members of Defendant IDT's legal department who remained after the layoff were Jewish and none were over the age of 50.

## Administrative Prerequisites

41. On May 30, 2019, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful retaliation for her complaints of sexual harassment as well as discrimination based on her age and religion. (Charge Nos. 440-2019-05178 and 440-2019-05347).

42. On August 12, 2019, Plaintiff also timely filed a charge with the Illinois Department of Human Rights ("IDHR") alleging unlawful retaliation for her complaints of sexual harassment as well as discrimination based on her age and religion. (Charge No. 2019CA2621).

43. On October 8, 2019, Plaintiff submitted a request to opt out of the investigation and administrative processing of her IDHR charge. On October 10, 2019, the IDHR issued Plaintiff her Notice of Right to Commence Action on that charge.

44. On November 26, 2019, Plaintiff asked the EEOC to issue her Notices of Right to Sue on her EEOC charges. Plaintiff will amend this Complaint once she has received those Notices.

## COUNT I – RETALIATION IN VIOLATION OF TITLE VII

45. Plaintiff incorporates by reference the preceding paragraphs 1-44 as though fully set forth in this Count I.

46. Plaintiff exercised her rights under Title VII of the Civil Rights Act and engaged in protected activity when she made a formal complaint of sexual harassment to Defendants' leadership, including Ms. Illiano and Ms. Giusto.

47. Defendants retaliated against Plaintiff as a result of her protected activity when they subjected her to materially adverse employment actions by isolating and excluding her from her coworkers and, ultimately, terminating her employment.

48. Defendants knowingly and willfully engaged in this retaliatory conduct with malice or reckless indifference to Plaintiff's federally protected rights under Title VII.

49. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, emotional distress, reputational harm, and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that the Court award her the following relief:

A. Enter a finding that Defendants subjected Plaintiff to retaliation in violation of Title VII;

B. Enter a finding that Defendants engaged in the retaliation with malice and reckless indifference for Plaintiff's rights under Title VII;

C. Award Plaintiff lost wages in the form of back and front pay;

D. Award Plaintiff damages for lost employee benefits;

E. Award Plaintiff compensatory damages in an amount to be proven at trial;

F. Award Plaintiff punitive damages in an amount to be proven at trial;

G. Award Plaintiff her attorney's fees and costs; and

H. Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT II – RETALIATION IN VIOLATION OF THE IHRA

50. Plaintiff incorporates by reference the preceding paragraphs 1-44 as though fully set forth in this Count II.

51. Plaintiff exercised her rights under the IHRA and engaged in protected activity when she made a formal complaint of sexual harassment to Defendants' leadership, including Ms. Illiano and Ms. Giusto.

52. Defendants retaliated against Plaintiff as a result of her protected activity when they subjected her to materially adverse employment actions by isolating and excluding her from her coworkers and, ultimately, terminating her employment.

53. Defendants knowingly and willfully engaged in this retaliatory conduct with malice or reckless indifference to Plaintiff's statutorily protected rights under the IHRA.

54. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, emotional distress, reputational harm, and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that the Court award her the following relief:

A. Enter a finding that Defendants subjected Plaintiff to retaliation in violation of the IHRA;

B. Enter a finding that Defendants engaged in the retaliation with malice and reckless indifference for Plaintiff's rights under the IHRA;

C. Award Plaintiff lost wages in the form of back and front pay;

D. Award Plaintiff damages for lost employee benefits;

E. Award Plaintiff compensatory damages in an amount to be proven at trial;

F. Award Plaintiff her attorney's fees and costs; and

G. Award Plaintiff any such further relief the Court may deem just and equitable.

**COUNT III – RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII**

55. Plaintiff incorporates by reference the preceding paragraphs 1-44 as though fully set forth in this Count III.

56. Defendants intentionally discriminated against Plaintiff based on her religion (Jewish) in violation of Title VII when they treated her differently than her non-Jewish counterparts and, ultimately, terminated her for pretextual reasons.

57. Defendants had no legitimate, nondiscriminatory reason for the disparate treatment or for discharging Plaintiff.

58. Defendants engaged in the aforesaid discriminatory acts with malice and/or with

reckless indifference to Plaintiff's federally protected rights under Title VII.

59. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, emotional distress, reputational harm, and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that the Court award her the following relief:

A. Enter a finding that Defendants subjected Plaintiff to religious discrimination in violation of Title VII;

B. Enter a finding that Defendants engaged in the religious discrimination with malice and reckless indifference for Plaintiff's rights under Title VII;

C. Award Plaintiff lost wages in the form of back and front pay;

D. Award Plaintiff damages for lost employee benefits;

E. Award Plaintiff compensatory damages in an amount to be proven at trial;

F. Award Plaintiff punitive damages in an amount to be proven at trial;

G. Award Plaintiff her attorney's fees and costs; and

H. Award Plaintiff any such further relief the Court may deem just and equitable.

## COUNT IV – RELIGIOUS DISCRIMINATION IN VIOLATION OF THE IHRA

60. Plaintiff incorporates by reference the preceding paragraphs 1-44 as though fully set forth in this Count IV.

61. Defendants intentionally discriminated against Plaintiff based on her religion (Jewish) in violation of the IHRA when they treated her differently than her non-Jewish counterparts and, ultimately, terminated her for pretextual reasons.

62. Defendants had no legitimate, nondiscriminatory reason for the disparate treatment

or for discharging Plaintiff.

63. Defendants engaged in the aforesaid discriminatory acts with malice and/or with reckless indifference to Plaintiff's statutorily protected rights under the IHRA.

64. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, emotional distress, reputational harm, and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that the Court award her the following relief:

A. Enter a finding that Defendants subjected Plaintiff to religious discrimination in violation of the IHRA;

B. Enter a finding that Defendants engaged in the religious discrimination with malice and reckless indifference for Plaintiff's rights under the IHRA;

C. Award Plaintiff lost wages in the form of back and front pay;

D. Award Plaintiff damages for lost employee benefits;

E. Award Plaintiff compensatory damages in an amount to be proven at trial;

F. Award Plaintiff her attorney's fees and costs; and

G. Award Plaintiff any such further relief the Court may deem just and equitable.

### COUNT V – AGE DISCRIMINATION IN VIOLATION OF THE ADEA

65. Plaintiff incorporates by reference the preceding paragraphs 1-44 as though fully set forth in this Count V.

66. Defendants intentionally discriminated against Plaintiff based on her age (57) in violation of the ADEA when they treated her differently than her younger counterparts and, ultimately, terminated her for pretextual reasons.

67. Defendants had no legitimate, nondiscriminatory reason for the disparate treatment or for discharging Plaintiff.

68. Defendants engaged in the aforesaid discriminatory acts with malice and/or with reckless indifference to Plaintiff's federally protected rights under the ADEA.

69. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, emotional distress, reputational harm, and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that the Court award her the following relief:

A. Enter a finding that Defendants subjected Plaintiff to age discrimination in violation of the ADEA;

B. Enter a finding that Defendants willfully engaged in the age discrimination with malice and reckless indifference for Plaintiff's rights under the ADEA;

C. Award Plaintiff lost wages in the form of back and front pay;

D. Award Plaintiff damages for lost employee benefits;

E. Award Plaintiff liquidated damages in an amount to be proven at trial;

F. Award Plaintiff her attorney's fees and costs; and

G. Award Plaintiff any such further relief the Court may deem just and equitable.

**COUNT VI – AGE DISCRIMINATION IN VIOLATION OF THE IHRA**

70. Plaintiff incorporates by reference the preceding paragraphs 1-44 as though fully set forth in this Count VI.

71. Defendants intentionally discriminated against Plaintiff based on her age (58) in violation of the IHRA when they treated her differently than her younger counterparts and,

ultimately, terminated her for pretextual reasons.

72. Defendants had no legitimate, nondiscriminatory reason for the disparate treatment or for discharging Plaintiff.

73. Defendants engaged in the aforesaid discriminatory acts with malice and/or with reckless indifference to Plaintiff's statutorily protected rights under the IHRA.

74. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, emotional distress, reputational harm, and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that the Court award her the following relief:

A. Enter a finding that Defendants subjected Plaintiff to age discrimination in violation of the IHRA;

B. Enter a finding that Defendants engaged in the age discrimination with malice and reckless indifference for Plaintiff's rights under the IHRA;

C. Award Plaintiff lost wages in the form of back and front pay;

D. Award Plaintiff damages for lost employee benefits;

E. Award Plaintiff compensatory damages in an amount to be proven at trial;

F. Award Plaintiff her attorney's fees and costs; and

G. Award Plaintiff any such further relief the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully Submitted,

SHERYL WEINGROW

By: /s/ *Kate Sedey*
One of Her Attorneys

Kate Sedey
Kristin M. Case
Case + Sedey, LLC
250 South Wacker Dr., Suite 230
Chicago, Illinois 60606
312-920-0400
312-920-0800 (fax)
ksedey@caseandsedey.com